IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

| | | |
|---|---|---|
| WORLDWIDE INNOVATIONS & | § | |
| TECHNOLOGIES, INC. and | § | |
| ANGIO SYSTEMS, INC. | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 1:06CV285-MD |
| | § | |
| MICROTEK MEDICAL, INC., and | § | |
| AADCO MEDICAL, INC. | § | |
| | § | |
| DEFENDANTS. | § | |

**DEFENDANT MICROTEK MEDICAL, INC.'S
ANSWER, COUNTERCLAIM, AND JURY DEMAND
TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant Microtek Medical, Inc. ("Microtek") files this Answer, Counterclaim, and Jury

Demand to the First Amended Complaint ("Complaint") for patent infringement, trademark

infringement, and breach of contract of plaintiffs Worldwide Innovations & Technologies, Inc.

("Worldwide") and Angio Systems, Inc. (collectively, "Plaintiffs").

**JURISDICTION**

1.      Microtek admits that the purported patent claims arise under the patent laws of the

United States, 35 U.S.C. §§ 1 *et seq.*  Microtek denies that it has ever directly infringed,

contributorily infringed, and/or induced infringement of U.S. Patent 4,938,233 (the "'233

Patent").  Microtek denies that the Plaintiffs are entitled to any damages for any alleged

infringement and any permanent injunction restraining Microtek from further alleged

infringement. Microtek has insufficient knowledge or information to admit or deny the allegations in the remainder of the paragraph and therefore denies them.

2.     Microtek admits that the purported trademark claims arise under the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq.*  Microtek admits that Plaintiff Worldwide is listed on the United States Patent and Trademark Office website as the owner of Trademark Reg. No. 2,219,950 (the "RADPAD Trademark"), but denies that it has ever diluted or infringed Plaintiff Worldwide's alleged RADPAD Trademark.

3.     Microtek admits that this Court has subject matter jurisdiction over this action with respect to Microtek.  Microtek admits that this Court has supplemental jurisdiction over Worldwide's state law claim against Microtek pursuant to 28 U.S.C. § 1367.  Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 3 as to the other defendant.

4.     Microtek admits that venue in this District is proper with respect to Microtek. Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 4 as to the other defendant.

5.     Microtek admits that this Court has personal jurisdiction over Microtek but denies all other allegations in paragraph 5 with respect to Microtek.  Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 5 as to the other defendant.

## PARTIES

6.     Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 6.

7.      Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 7.

8.      Microtek admits the allegations of paragraph 8.

9.      Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 9.

10.      Microtek denies the allegations in paragraph 10 with respect to Microtek. Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 10 with respect to the other defendant.

## BACKGROUND

11.      Microtek denies the allegations in paragraph 11.  Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 11 as to the other defendant.

12.      As to Microtek, Microtek admits that certain employees of Microtek knew of the '233 Patent prior to the filing of the Complaint, but denies the remaining allegations of paragraph 12.  Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 12 as to the other defendant.

13.      Microtek admits that it has used the name "RADBarrier" for at least one of its products but denies that product infringes the '233 Patent.  Microtek admits it has had knowledge of Plaintiff Worldwide's RADPAD Trademark, but denies its use of RADBarrier violates Plaintiffs' rights in the RADPAD Trademark and denies that it has had no reasonable basis that its use of RADBarrier did not violate Plaintiffs' rights.

14.      Microtek admits that on April 10, 2001, its President, Dan R. Lee, signed a Mutual Confidential Disclosure Agreement ("MCDA"), a purported copy of which is attached as

Exhibit 1 to Plaintiffs' First Amended Complaint. Microtek denies the remaining allegations of paragraph 14.

15.      Microtek admits that the MCDA attached as Exhibit 1 to Plaintiffs' First Amended Complaint recites the following: "Receiving Party [Microtek] shall use the Confidential Information for purposes of evaluation only and for no other purpose;" the "rights and duties created by this Agreement are cumulative of the rights arising under applicable law for the protection of trade secrets, confidential information and proprietary information;" and "Nothing herein shall in any way affect the rights of either party under the patent laws of any country."

16.      Microtek denies the allegations of paragraph 16.

## COUNT I – PATENT INFRINGEMENT

17.      Microtek incorporates by reference its answers to the allegations of paragraphs 1-16 above.

18.      Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 18.

19.      Microtek denies the allegations of paragraph 19 as to Microtek. Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 19 as to the other defendant.

20.      Microtek denies the allegations of paragraph 20 as to Microtek. Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 20 as to the other defendant.

21.      Microtek admits that certain employees of Microtek knew of the '233 Patent prior to the filing of the Complaint, but denies the remaining allegations of paragraph 21. Microtek

lacks sufficient knowledge or information to admit or deny the allegations of paragraph 21 as to the other defendant.

22.     Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 22.

23.     Microtek denies the allegations of paragraph 23 as to Microtek.  Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 23 as to the other defendant.

24.     Microtek denies the allegations of paragraph 24 as to Microtek.  Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 24 as to the other defendant.

## COUNT II – TRADEMARK INFRINGEMENT AND/OR DILUTION

25.     Microtek incorporates by reference its answers to the allegations of paragraphs 1-24 above.

26.     Microtek lacks sufficient knowledge or information to admit or deny the allegations of paragraph 26.

27.     Microtek denies the allegations in Paragraph 27.

28.     Microtek denies the allegations in Paragraph 28.

## COUNT III – BREACH OF CONTRACT

29.     Microtek incorporates by reference its answers to the allegations of paragraphs 1-28 above.

30.     Microtek admits that on April 10, 2001, its President, Dan R. Lee, signed the MCDA with Worldwide.  On information and belief, Microtek denies that Worldwide provided

Microtek with any of its confidential, proprietary, trade secret, and patented information concerning the RADPAD and the '233 Patent. Microtek denies the remaining allegations of paragraph 30.

31. Microtek denies the allegations of paragraph 31.

32. Microtek denies the allegations of paragraph 32.

## RELIEF SOUGHT BY PLAINTIFFS

33. Microtek denies that Plaintiffs are entitled to any of the relief requested in paragraphs A.-K. of the Complaint.

## AFFIRMATIVE DEFENSES

### First Defense

34. Microtek has not directly infringed, contributorily infringed, or induced the infringement of any valid claim of the '233 Patent.

### Second Defense

35. The claims of the '233 Patent are invalid for failing to comply with the requirements of Title 35 of the United States Code.

### Third Defense

36. The Plaintiffs' claims of infringement of the '233 Patent are barred by laches and/or equitable estoppel. Among other activities, in February of 2004 counsel for Worldwide sent a letter to the President and CEO of Microtek stating that Worldwide would like to provide Microtek with "notice of the WIT Patents" and referred in that letter to "the RADBarrier products." The letter defined the "WIT Patents" as four specific Worldwide patents. Notably, the listed WIT Patents did not include the '233 Patent, which is asserted by Plaintiffs in the

Complaint. Microtek responded to Worldwide's letter in part by requesting a more detailed analysis from Worldwide. In a letter dated November 5, 2004, Worldwide indicated that it was conducting an ongoing analysis of the RADBarrier products. The November 5, 2004 letter identified only those four previously-identified patents and a pending application as "relevant patents," which did not include the '233 Patent. This was the last communication from Worldwide to Microtek that referred to RADBarrier products prior to the filing of the Complaint, almost two years later.

<u>Fourth Defense</u>

37.     By reason of proceedings in the United States Patent & Trademark Office (the "USPTO"), and by reasons of the statements, admissions, and/or amendments made by the applicants or on the applicants' behalf, Plaintiffs are estopped from construing any claim of the '233 Patent to cover any Microtek product or service that is alleged to infringe the '233 Patent.

<u>Fifth Defense</u>

38.     Plaintiffs are prohibited from recovering damages for activities alleged to have occurred before Plaintiffs comply with 35 U.S.C. § 287.

<u>Sixth Defense</u>

39.     Plaintiffs are prohibited from recovering damages for activities alleged to have occurred before Plaintiffs provide actual notice of the '233 Patent and the specific activities alleged to infringe.

<u>Seventh Defense</u>

40.     Plaintiffs are not entitled to injunctive relief because any injury to the Plaintiffs is not immediate or irreparable, and Plaintiffs have an adequate remedy at law.

<u>Eighth Defense</u>

41.     The '233 Patent is unenforceable due to the applicant's and/or his patent attorneys' inequitable conduct before the USPTO during prosecution of the application that eventually became the '233 Patent.  For example, during the pendency of the patent application that led to the '233 Patent (the "'233 Application"), the applicant and/or his patent attorneys (1) failed to disclose known, material information to the USPTO, and (2) made and maintained material misrepresentations or false statements to the USPTO in procuring the '233 Patent.  The applicant's and/or his patent attorneys' material omissions and materially false statements were made with the intent to deceive and did deceive the USPTO with respect to the '233 Patent.  As a result, the '233 Patent is unenforceable.

42.     The '233 Patent issued on July 3, 1990.  Prior to that date, both the inventor, Dr. William Orrison, and his patent attorneys (*i.e.*, his patent attorneys at the law firm Foley & Lardner LLP) had a duty of candor and good faith in dealing with the USPTO in connection with the filing and prosecution of the '233 Application.  Although Microtek has had only a limited opportunity for discovery, the information uncovered to date indicates that the patent examiner allowed the '233 Patent only because he was unaware of material information and because he was mislead by the applicant and/or his patent attorneys.  The relevant omissions and misrepresentations include at least the following.  Microtek reserves the right to refer to additional omissions and misrepresentations at a trial of this action.

43.     First, the applicant and/or his patent attorneys failed to adequately disclose U.S. Patent 4,621,808 (the "'808 Patent") to the patent examiner at the USPTO.  While the specification of the '233 Patent discusses the '808 Patent (so the inventor and prosecuting attorney were obviously aware of it), the '808 Patent was never separately submitted in an

Information Disclosure Statement for consideration by the examiner. It is not cited on the face of the '233 Patent.

44. Second, the applicant and/or his patent attorneys failed to disclose to the USPTO a foreign examination report for a foreign application that corresponds to the '233 Patent. On September 28, 1989, more than nine months before the '233 Patent issued, the European Patent Office issued an International Preliminary Examination Report. This report not only rejects the claims as unpatentable over French Patent No. FR-A-2,439,460 (the "French Patent"), it also rejects the claims as being indefinite (having a lack of clarity) due to a coefficient of friction limitation in the claims.

45. Third, inventor Dr. Orrison knew of existing shields and their properties, such as lead vinyl shields, that possessed the characteristics of the shield recited in Claim 1 of the '233 Patent, but failed to disclose any particular prior art lead vinyl shields or their properties to the USPTO. Dr. Orrison conceded in his deposition that prior art lead vinyl shields have all of the properties recited in Claim 1, yet he failed to inform the patent examiner of those properties. Despite knowledge that Claim 1 was anticipated, Dr. Orrison's patent attorneys repeatedly asserted to the USPTO that the properties of Claim 1 distinguished the invention over prior art lead vinyl shields. Similarly, Dr. Orrison and his attorneys failed to disclose the properties of the material disclosed in the '808 Patent to the patent examiner.

46. Fourth, Dr. Orrison's patent attorneys misrepresented the "closest prior art" lead vinyl shields as not having the properties of Claim 1. Furthermore, they failed to correct their misrepresentation when a PCT Examination Report rejected the claims over the French Patent, making it the "closest prior art." Dr. Orrison and/or his patent attorneys were also aware that the properties of Claim 1 could be achieved with the material disclosed in the '808 Patent because

that is the material that Dr. Orrison used to create his prototypes. The '808 Patent or the French Patent were the closest prior art.

47.     Fifth, the applicant and/or his patent attorneys, both in the specification of the '233 Patent and during the prosecution of the '233 Application, repeatedly misrepresented that the invention of the '233 Patent overcomes various problems allegedly associated with prior art lead vinyl shields.

48.     For example, the specification of the '233 Patent describes lead vinyl shields as having "many inherent drawbacks" that are purportedly overcome by the '233 Patent. These described "inherent drawbacks" include, without limitation, that the lead vinyl sheeting material: (1) "is of only average pliability, at best;" (2) "is not capable of draping smoothly over regions of a patient to be shrouded;" (4) "will leave air pockets between it and the patient's body;" (5) is "difficult to affix to or about a patient and/or the table;" and (6) is "susceptible to slipping or moving in relationship to the patient during use." *See, e.g.*, Col. 2, l. 50 – Col. 3, l. 41. The '233 Patent repeatedly asserts that the invention of the '233 Patent overcomes the problems of lead vinyl shields. *See, e.g.*, Col. 3, l. 44 – Col. 4, l. 7; and Col. 8, l. 38 – Col. 10, l. 17. The '233 Patent also ties the supposed advantages of the '233 Patent to the "physical properties of durometer and coefficient of sliding friction of radiation shields of the present invention."

49.     The applicant and/or his patent attorneys also repeatedly asserted throughout prosecution that the invention of the '233 Patent overcomes alleged problems with lead vinyl shields. As just one particular example, the applicant and/or his patent attorneys argued in an Appeal Brief to the Board of Patent Appeals and Interferences that the shield of the '233 Patent, "as claimed, fulfills a want and long felt need unmet by the prior art, especially in overcoming the inherent inadequacies of lead-polymeric shielding," along with devoting multiple pages of

the Appeal Brief explaining how the alleged invention claimed in the '233 Patent overcomes the supposed problems of lead vinyl shields. The Examiner mailed a Notice of Allowance mailed in response to the Appeal Brief.

50.     Despite these representations to the USPTO that the invention claimed in the '233 Patent overcomes the described disadvantages of lead vinyl shields, Dr. Orrison conceded in his deposition that prior art lead vinyl shields have all of the properties recited in Claim 1, and thus the invention claimed in the '233 Patent does not overcome the described disadvantages of the prior art lead vinyl sheets. Since prior art lead vinyl shields have the properties recited in Claim 1 – and it is these properties which the applicant and/or his patent attorneys argued purportedly overcome the problems with prior art lead vinyl shields – then the invention recited in at least Claim 1 must necessarily share the same problems as prior art lead vinyl shields. As evidenced at least by Dr. Orrison's testimony, the applicant and/or his patent attorneys were aware that the claimed invention did not overcome the supposed "inherent drawbacks" of lead vinyl shields, yet they repeatedly argued to the contrary before the USPTO, misleading the Examiner into allowing the '233 Application.

51.     The misrepresentations, as well as the information that Dr. Orrison failed to disclose to the examiner, were material. A patent examiner would have considered all of the above information important in deciding whether to allow the '233 Application to issue as the '233 Patent. The examiner certainly would have wanted to know about the '808 Patent and that both the material disclosed in the '808 Patent and the prior art lead vinyl shields had the properties recited in Claim 1. Both the '808 Patent and the prior art lead vinyl shields anticipate Claim 1 so this information was obviously material. The USPTO's subsequent actions demonstrate its materiality. In a continuation-in-part application, the applicant and/or his patent

attorneys submitted the '808 Patent to the examiner in an information disclosure statement. The examiner used the '808 Patent to reject claims to a radiation shield having material properties like those disclosed in the '808 Patent. The applicant and his representatives ultimately acquiesced in this rejection by abandoning the CIP application. A reasonable examiner would have considered the '808 Patent important in deciding whether to allow the application that led to the '233 Patent because an examiner *did* find the '808 Patent important in rejecting claims directed to similar subject matter. The PCT Examination Report was also material.

52. Dr. Orrison and/or his patent attorneys had knowledge that prior art lead shields possess the characteristics of the shield recited in Claim 1. Dr. Orrison's patent attorneys repeatedly emphasized that the invention was different than lead vinyl shields due to the properties recited in Claim 1. As just one example, Dr. Orrison's patent attorneys argued in an Appeal Brief to the Board of Patent Appeals and Interferences at the USPTO: "Appellant is the first to provide an article comprised of the specific elements recited in the claims useful in the specific environment of radiological practice." By Dr. Orrison's own admission, this was not true--lead vinyl shields were comprised of the specific elements. In addition, Dr. Orrison and/or his patent attorneys repeatedly emphasized that the claimed invention overcame "inherent drawbacks" with prior art lead vinyl shields.

53. Dr. Orrison's patent attorneys made similar misrepresentations about the French Patent and failed to disclose the PCT Examination report. In the Appeal Brief, Dr. Orrison's patent attorneys argued: "None of these specific and positively-recited properties of applicant's claimed radiation shield is disclosed or suggested by [the French Patent]; nor is there any basis to conclude rationally that such properties are inherently, i.e., necessarily, possessed by the material described in the reference." The foreign patent examiner of the corresponding PCT Application

argued in the Examination Report that the French Patent taught various limitations of Claim 1 and that the "ranges for the parameters indicated in Claim 1 must be regarded to comprise essentially the whole ranges which a skilled man would obviously select." Yet, Dr. Orrison's patent attorneys failed to provide this information (clearly at odds with its position in the appeal brief) to the examiner.

54.     The inventor and/or his patent attorneys repeatedly failed to disclose material information and made misrepresentations that were inconsistent with information that was otherwise known to them. After becoming aware of additional information, they did not seek to correct their prior misrepresentations. Thus, there is ample evidence of intent to deceive in this case. Intent may be inferred from the pattern of conduct, the misrepresentations, and the volume and materiality of information withheld from the patent examiner.

<u>Ninth Defense</u>

55.     Plaintiffs lack standing to pursue the patent infringement claims based on the '233 Patent.

<u>Tenth Defense</u>

56.     On information and belief, the '233 Patent is unenforceable due to patent misuse.

<u>Eleventh Defense</u>

57.     Plaintiffs' trademark claims are barred by laches, waiver, and/or equitable estoppel.

<u>Twelfth Defense</u>

58.     Plaintiffs' trademark claims are barred because there is no likelihood of confusion.

<u>Thirteenth Defense</u>

59.     Plaintiffs' breach of contract claim regarding the MCDA is barred by the statute of limitations.

<u>Fourteenth Defense</u>

60.     Microtek has not breached the MCDA.

<u>Fifteenth Defense</u>

61.     Upon information and belief, no confidential information of Plaintiffs was disclosed to Microtek.

<u>Sixteenth Defense</u>

62.     Plaintiffs' breach of contract claim regarding the MCDA is barred, in whole or in part, by the doctrine of laches.

<u>Seventeenth Defense</u>

63.     Plaintiffs' breach of contract claim regarding the MCDA is barred, in whole or in part, by the doctrine of estoppel.

<u>Eighteenth Defense</u>

64.     Plaintiffs' breach of contract claim regarding the MCDA is barred, in whole or in part, by the doctrine of waiver.

<u>Nineteenth Defense</u>

<u>(Other Affirmative Defenses Based on Later Discovered Evidence)</u>

65.     Microtek reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, the Trademark Laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

Microtek counterclaims against Plaintiffs for declaratory judgment and alleges the following:

1.      Microtek incorporates by reference all of the allegations of the preceding Answer from paragraphs 1 to 65.

2.      This counterclaim arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States set forth in Title 35 of the United States Code and in Title 37 of the Code of Federal Regulations.

3.      This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201(a).  Venue is based on 28 U.S.C. §§ 1391(b) and (c) and 1400(b).  This Court has personal jurisdiction over Plaintiffs.

4.      Plaintiffs filed the Complaint against Microtek for infringement of the '233 Patent.  Accordingly, an actual justiciable case or controversy exists between Plaintiffs and Microtek.

5.      Microtek has not infringed any valid claim of the '233 Patent.

6.      The claims of the '233 Patent are invalid for failure to comply with the requirements of Title 35 of the United States Code.

7.      The '233 Patent is unenforceable due to the applicant's and/or his patent attorneys' inequitable conduct before the United States Patent & Trademark Office.  Microtek incorporates by reference the facts alleged above in Paragraphs 41-54 supporting this claim.

8.      This action qualifies as an exceptional case, supporting an award of reasonable attorney fees, costs, and expenses for Microtek against plaintiffs pursuant to 35 U.S.C. § 285.

## MICROTEK'S PRAYER FOR RELIEF

Microtek prays for judgment as follows:

a)    Denying all relief sought by Plaintiffs;

b)    Dismissing with prejudice all claims that were or could have been asserted by Plaintiffs relating to the '233 Patent;

c)    Adjudge, declare, and decree the claims of the '233 Patent are not infringed by Microtek;

d)    Adjudge, declare, and decree that the claims of the '233 Patent are invalid and unenforceable;

e)    Permanently enjoin Plaintiffs, their successors and assigns, and anyone acting in concert therewith or on their behalf, from attempting to enforce the '233 Patent against Microtek or any parents, affiliates, or subsidiaries of Microtek, or their respective officers, agents, employees, successors, and assigns;

f)    Declaring this case "exceptional" under 35 U.S.C. §285 and awarding Microtek reasonable attorneys' fees and expenses incurred in defense;

g)    Award the costs of this case to Microtek; and

h)    Awarding to Microtek any further relief to which Microtek is entitled.

## DEMAND FOR TRIAL BY JURY

Microtek demands a jury trial for all issues deemed to be triable by a jury.

Dated:  September 12, 2007                Respectfully submitted,

                                          MICROTEK MEDICAL, INC.

                            By:    */s/ David G. Wille*_____
                                   DAVID G. WILLE

DAVID G. WILLE
BRADLEY P. WILLIAMS
BAKER BOTTS, L.L.P.
2001 ROSS AVENUE, SUITE 600
DALLAS, TX 75201
Phone: 214-953-6500
Fax: 214-953-6503
Email: david.wille@bakerbotts.com


JOHN R. CROWELL
GHOLSON, HICKS & NICHOLS
POST OFFICE BOX 1111
COLUMBUS, MISSISSIPPI  39703-1111
Phone: 662.243.7308
Fax: 662.327.1485
Email: jcrowell@ghnlaw.com

## CERTIFICATE OF SERVICE

I certify that on September 12, 2007, all counsel of record are being served with a copy of this document either: (1) by the Court's Electronic Filing System, (2) by U.S. mail, or (3) by electronic mail pursuant to Local Rule 5.2(C).

> */s/ David G. Wille*
> DAVID G. WILLE

Counsel for Plaintiff Worldwide
Innovations & Technologies, Inc.:

*Cuccinelli & Day, PLLC*
Ken Cuccinelli, Esq.
Trey Mayfield, Esq.
10560 Main Street, Suite LL17
Fairfax, VA 22030

*Webb Sanders & Williams P.L.L.C.*
B. Wayne Williams
P.O. Box 496
363 N. Broadway St.
Tupelo, MS 33082